WESTINGHOUSE ELECTRIC & MFG. CO. v. WAGNER ELECTRIC
MFG. CO.*

WAGNER ELECTRIC MFG. CO. v. WESTINGHOUSE ELECTRIC &
MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1916.)

Nos. 4432, 4444.

1. PATENTS �köö324(6)—SUIT FOR INFRINGEMENT—ACCOUNTING BEFORE MASTER
—PROCEEDINGS AFTER REVERSAL.
An equity case for infringement, reversed and remanded, with directions that it be recommitted to a master "for a new hearing on all the questions involved in the original reference and on evidence already submitted and such additional testimony as may be offered," is open for full new hearing before the master under the original reference, and the "evidence already submitted" is entitled to no greater weight on such hearing than that taken thereafter.
[Ed. Note.—For other cases, see Patents, Cent. Dig. § 600; Dec. Dig. ⊫ö324(6).]

2. PATENTS ⊫ö322—SUIT FOR INFRINGEMENT—ACCOUNTING BEFORE MASTER—
NEW HEARING.
The fact that a table showing in detail sales of infringing articles by defendant was prepared under direction of one of its officers from its books, at the instance of complainant, and admitted in evidence on the former hearing, and that its substance was stipulated into the record for the purpose of appeal, to save the cost of printing, did not estop defendant from showing on the new hearing that through mistake the table included articles not containing the infringing device.
[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. ⊫ö322.]

3. PATENTS ⊫ö322—SUIT FOR INFRINGEMENT—REFERENCE FOR ACCOUNTING.
Where an appellate court, on reversal of a decree awarding profits against an infringer, directed a recommittal of the case to a master for a new hearing, on setting aside the master's report for failure to prop-

erly consider new evidence offered, the court should, under the circumstances of this case, have again referred it for further hearing.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. ☞322.]

4. WORDS AND PHRASES—"FORCE AND EFFECT."
   The "force and effect" of evidence is its ultimate expression in the facts proved by it.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Wagner Electric Manufacturing Company. From a final decree, both parties appeal. Reversed.

For opinion below, see 218 Fed. 646.

Thomas B. Kerr, of New York City, and Paul Bakewell, of St. Louis, Mo., for plaintiff.

Edwin E. Huffman, of St. Louis, Mo., and Melville Church, of Washington, D. C., for defendant.

Before HOOK, Circuit Judge, and ELLIOTT and YOUMANS, District Judges.

HOOK, Circuit Judge. These appeals involve an accounting by defendant, the Wagner Company, for profits realized from an infringement of claim 4 of patent No. 366,362 to George Westinghouse, Jr., for improvements in electrical converters or transformers. The validity of claim 4 and the fact of infringement were established in the Second Circuit in a suit against a customer of the defendant. Westinghouse Electric & Mfg. Co. v. Union Carbide Co. (C. C.) 112 Fed. 417; Id., 55 C. C. A. 230, 117 Fed. 495. The plaintiff, Westinghouse Company, the assignee of the patent, then brought this suit in the court below and obtained a decree of permanent injunction and for an accounting. (C. C.) 129 Fed. 604. At that time it attempted to have the decree cover a kind of transformer called "Type M," which defendant was then manufacturing; but the trial court held that claim 4 was confined to the particular combination described, and that "Type M" did not infringe. The taking of the account was referred to a master. At the hearing before him the question was reduced to one of profits, to the exclusion of damages. From the evidence the master found and reported profits aggregating $132,433.35. The defendant contended that the infringing transformers sold by it during the accounting period contained features and elements of value not covered by the patent, and that, the plaintiff having failed to separate and apportion the profits accordingly, its recovery should be confined to a nominal sum; but the master disallowed the contentions. Upon the return of his report the trial court held with defendant. On appeal to this court the decree of the trial court was affirmed. 97 C. C. A. 621, 173 Fed. 361. A writ of certiorari was granted by the Supreme Court to review the rules applied to the accounting, but not for the purpose of re-examining the decision that defendant's "Type M" was not an infringement. That court reversed the decree and remanded

the case, "with power to hear and determine motions to amend the pleadings, and with directions that the case be recommitted to a master for a new hearing on all the questions involved in the original reference, and, on evidence already submitted and such additional testimony as may be offered, for further proceedings not inconsistent with this opinion." 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653. In its opinion the Supreme Court dissipated the confusion which had long existed with respect to the burden of proof, etc., in accountings for profits in patent infringements.

When the case went back to the trial court it was recommitted to the same master. Before him the plaintiff rested upon the evidence received at the first hearing, and, although the defendant introduced much new evidence upon the number of infringing transformers sold, the profits it realized from the entire structures, and upon the separation and apportionment of the profits between what it contended were patented and unpatented elements, the master again found against it in the sum of $132,433.35. The trial court said the master had practically ignored defendant's additional evidence, sustained exceptions to the report, found the amount of defendant's liability did not exceed $10,000, and rendered a decree for that sum. Both plaintiff and defendant have appealed. The foregoing outline of the long controversy is quite general and brief, but it is sufficient for present purposes.

[1, 4] The attitude of the master toward defendant's additional evidence at the second hearing is shown by the following excerpts from his report:

"The Supreme Court of the United States has remanded this case for a rehearing. 'On the evidence already submitted,' etc. The court has given me no authority to impair, diminish, change, or reject any part of that 'evidence already submitted.' As shown elsewhere, I have no power to do any of these things, and I have endeavored during the hearing to make it clear that I have no authority to allow the parties to do so."

"Counsel for complainant insist that the defendant is estopped to contest the force and effect of the 'evidence already submitted.' I feel compelled by the decision to sustain that position."

It is clear the master did not give the new evidence the consideration it deserved. The "force and effect" of the evidence already submitted was its ultimate expression in the facts proved by it, and the ruling of the master led to a practical denial of the new hearing contemplated. So far as concerned the matters of accounting submitted to him the case was at large for a new hearing on all the questions involved in the original reference. That plainly meant the hearing was to be full and plenary, without conviction prepense or insistence upon prior conclusions of fact in the face of countervailing additional evidence. The hearing was not to be approached with the idea that certain of the questions of fact involved had been definitely settled or foreclosed. As customary in such cases, the old evidence was to remain, and new evidence relevant to the issue was to be received, if offered. In the very nature of things the former was not to be given precedence or superior regard simply because it had been first received and had been once considered. Each class and each item of evidence finally before him should have been accorded the probative value to which it was inher-

ently entitled by settled rules. It is true that the master reviewed the additional evidence to an extent and held it insufficient, but it was done in the light and under the influence of the erroneous theory adopted with reference to it.

[2] One matter of evidence merits especial attention. While plaintiff was making its proof at the first hearing before the master of the extent of defendant's infringing business, it called Mr. Layman, an officer of defendant, as a witness, and had him produce the corporate books and records. At plaintiff's instance Mr. Layman caused to be compiled a tabulation of infringing transformers sold during the accounting period. It consisted of two typewritten volumes of about 360 pages, and showed in detail each sale, the size or capacity and the type of the transformer sold, the prices to customers, commissions to agents, and net prices to defendant. It showed the sale of more than 16,000 transformers. The tabulation, termed the "Layman Schedule," was received in evidence and was the authority for the figures shown in the report of the master and the subsequent opinions of the courts. In verifying it when produced, Mr. Layman testified that he had not personally made the tabulation, that it had been done by one of his clerks, assisted by a representative of the master, but that he believed it to be a correct showing of all infringing transformers sold by the defendant.

At the second hearing the defendant offered substantial evidence tending quite strongly to show a mistake had been made, and that the Layman schedule was materially inaccurate in several respects, but principally in that it included large numbers of transformers of a size and type in which the patented invention had never been used—that the bookkeeper and the stenographer of the master had evidently endeavored to make a list of all the transformers sold, regardless of infringement. The defendant employed a public accountant, who drew off from its books a list of every transformer sold during the period, submitted it for comparison with the Layman schedule, and supplemented it with testimony to show the inaccuracy of the latter in respect of the question in issue. The master said:

"The defendant is estopped from denying the accuracy of the schedule of infringing transformers, and, estopped from stating that that schedule contains anything but a list of infringing transformers. For the defendant to take any other course now would be to take an inconsistent position, and this the defendant cannot do."

The reason for this ruling was partly because a stipulation had been made by counsel for both parties of the substance of the Layman schedule, in order to save expense in printing the record for this court on the first appeal.

The master erred. The schedule should have been regarded, not as conclusive, but as evidence in the case, to be considered in connection with all the testimony respecting it and the circumstances of its production. The schedule was intended at the time as purely of a testimonial character, not as a hard and fast agreement or settlement of substantive rights. The corporate records did not themselves show infringement, but oral testimony on that subject was necessary, and it is urged a serious mistake was made in giving it. The elements of an

estoppel are not present. The plaintiff was not induced to change its position to its disadvantage. The successful impairment of the probative. value of the schedule and the testimony regarding it would be nothing more than the correction of a mistake and the establishment of the truth as to an issue of fact. The stipulation of counsel was not designed even to settle a fact otherwise unproved, or to dispense with the taking of evidence which afterwards appeared to have escaped the reach of the parties. It was simply an agreement of convenience to obviate an unnecessary cost of printing. If in fact it proceeded upon a mistake or inadvertence, the defendant should have been allowed to correct it under the circumstances of the case. Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968.

[3] The direction of the Supreme Court was to recommit the case to a master. We think that, when it appeared from the master's second report that the hearing contemplated had not been given, the trial court should have vacated it and again referred the case, instead of feeling obliged to institute an original investigation of its own. It was entitled, as this court is now, to the aid of a first-hand consideration of an accounting before a master. In this particular we follow Chicago, etc., Ry. v. Tompkins, 176 U. S. 167, 179, 20 Sup. Ct. 336, 44 L. Ed. 417, and the many cases in which the practice has been applied. A detailed report, after a consideration of all the evidence, showing the basis and the constituents of the award which is recommended, will enable the courts which pass upon it the better to perform their duties.

The decree is reversed, and the cause is remanded, with direction to recommit it to a master for a new hearing on all the questions involved in the original reference, and, on evidence already submitted and such additional evidence as may be offered, for further proceedings not inconsistent with this opinion.

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes