## DECKER v. SMITH.

(Circuit Court of Appeals, Second Circuit. May 24, 1916.)

No. 272.

1. PATENTS &=328—VALIDITY AND INFRINGEMENT—NURSING BOTTLE.

The Decker patent, No. 521,773, for a nursing bottle, was not anticipated and disclosed invention; also held infringed.

2. PATENTS &=328—VALIDITY—NURSING NIPPLE.

The Decker patent, No. 587,939, for a nursing nipple, held void for lack of patentable novelty.

3. PATENTS &=318(6)—SUIT FOR INFRINGEMENT—ACCOUNTING FOR PROFITS.

Where it was shown by satisfactory evidence that a certain portion at least of the time of a traveling salesman was devoted to the sale of an infringing article, the infringer is not deprived of the right to an appropriate credit for the expense, because he did not keep books in which it was so apportioned.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 576; Dec. Dig. &=318(6).]

Appeal from the District Court of the United States for the Northern District of New York.

Suit in equity by William M. Decker, doing business as the Hygeia Nursing Bottle Company, against De Wane B. Smith, doing business as the Yankee Company. Decree for complainant, and defendant appeals. Modified.

For opinion below, see 225 Fed. 776.

Defendant appeals from an interlocutory decree holding valid and infringed patent for nursing bottle, dated June 19, 1894, and patent for nursing nipple, dated August 10, 1897, each issued to plaintiff. Defendant also appeals from final decree awarding to plaintiff the amount of defendant's profits, the sum of $2,826.26, with interest from November 10, 1914, and costs.

R. R. Martin, of Utica, N. Y., for appellant.

J. W. Ellis, of Buffalo, N. Y., for appellee.

Before COXE, Circuit Judge, and HOUGH and MAYER, District Judges.

MAYER, District Judge. [1] As both patents have expired, and so far as appears, this is the only outstanding controversy in respect thereof, an extended discussion of the patent features of the case is unnecessary.

"My invention," says the patentee, "relates especially to the gravity species, and has for its object to facilitate the gravitation of the fluid without obstruction, and consists of a cell or receptacle constructed without breast or neck, and closed by an elastic cover constituting an integral breast and nipple, substantially similar to a mother's breast and nipple. As a result of this construction the receptacle as well as its cover are capable of ready and perfect cleansing, which is an all-important consideration in administering artificial food to infants and another result is the ready flow of the fluids by gravity into the breast and nipple without necessitating the undue elevation of the receptacle and also the avoidance of collapse of the nipple as the result of

suction. A further advantageous result of my invention consists in the fact that the infant is restricted to a natural hold on the nipple and it can only enter the mouth to a limited extent and not so far as to gag or choke the child, but to a sufficient distance to avoid ingestion of food by restricting its discharge to the tongue and not beyond the tongue and into the throat, as occurs in the use of receptacles which may be forced into the mouth."

Claims 1 and 3 of the first patent, as to which infringement is charged, are as follows:

"1. A nursing device consisting of a cell or receptacle having substantially an uncontracted and open upper portion closed by an elastic breast of dome-shaped form, terminating at its apex in a perforated nipple substantially as and for the purposes set forth."

"3. As a new article of manufacture a cover for a nursing cell or food receptacle consisting of an elastic dome-shaped breast open at its base and adapted to embrace the cell, and, terminated near its upper portion and made integral with a perforated nipple, substantially as and for the purpose set forth."

The device accomplished all that Decker claimed for it, attained a large commercial success, received the approval of physicians, and was acquiesced in for a long period of years. The prior art is merely a history of vain attempts to produce a simple and hygienic device such as Decker succeeded in doing. The opinion of the District Judge deals so comprehensively with the patent and the prior art that we need only add that the Ware nipple, upon which so much emphasis is laid by defendant, does not, in our opinion, either anticipate or negative invention; for, in addition to certain structural differences, it is obviously objectionable on hygienic grounds, because of an internal vent tube which can be kept clean, if at all, only with great difficulty. We therefore agree both with the reasons and conclusion of the District Judge, sustaining the patent and finding infringement.

[2] The second patent is merely for "a new article of manufacture" having a reinforced zone, or, in other words, part of the breast portion of Decker's original device is made thicker. This so-called invention was devised, according to Decker, because:

"From practical experience in the use of said device I have discovered that the breast portion of the cover has a tendency to sink or draw down into the cell or receptacle, and also to collapse laterally as a result of suction, and the nipple portion consequently has a tendency to likewise sink bodily and turn over laterally."

We think this is the old story of trying to add to a meritorious invention an obvious improvement, so as to extend the life of the patent monopoly, and that this patent represents even less than would be expected from the man skilled in the art. We therefore hold it void for want of patentable novelty.

[3] Four exceptions were filed to the report of the master on the accounting and overruled by the District Court. We agree with the court below, except as to the third exception, which relates to the disallowance of an item of $1,162.50, one-quarter of the salary and expenses paid by defendant to C. E. Marks, as one of the proper expenses of defendant's business in selling the infringing merchandise. Defendant conducted business at Utica as D. B. Smith & Co., and also as the Yankee Company, and was sole proprietor of both concerns.

As D. B. Smith & Co. defendant sold spray pumps. As Yankee Company defendant sold mufflers for gas engines, a few whistle outfits for motor boats, and nursing bottles and nipples. The nursing bottles and nipples were manufactured for him, and he assembled and shipped them to customers.

Marks was employed as a traveling salesman during the years 1909 and 1910, and during the accounting period traveled from coast to coast, visiting cities and towns of a population of 25,000 and upwards. His salary of $1,800 per annum and expense account of $40 per week seem to us to be reasonable. He testified that he spent more than half his time in selling and working up a trade in the defendant's nursing bottles. There is no reason to doubt his testimony, although it was based on memory, and not on any written memoranda. The claim is not made for defendant's payments to Marks on the basis of one-half, but only for the irreducible minimum of one-quarter, because defendant's son, who was his general manager, figured out one-quarter as a fair allowance attributable to the nursing bottle business.

We agree with the District Judge that the "loose business methods of an infringer cannot be used by him as a shield * * * to defeat the recovery of profits actually made by the infringer"; but the question is always one of the probative value of the testimony. Many small merchants do not keep elaborate sets of books pursuant to the teachings of the modern accountant or the much talked of efficiency engineer, and, because of limited facilities, do not and probably cannot work out accurate calculations of complicated overhead problems. But, if the evidence of a specific and separable item of expenditure is satisfactory, and, in a case like this, a figure named undoubtedly represents the minimum, then the mere failure to keep books cannot deprive a defendant of the right to an appropriate credit for expenses, within the principle of Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566, and there is nothing in Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, to the contrary.

Had the District Court doubted the truthfulness of the Marks testimony that he spent some of his time in this business, we should have hesitated to disturb this item; but the court said, "He [Marks] undoubtedly was occupied during part of his trip in selling nursing bottles and nipples," and the master said precisely the same.

We conclude, therefore, that the interlocutory decree should be modified by dismissing the bill as to the second patent, and that the final decree should be modified by deducting from $2,826.26 the sum of $1,162.50, leaving a balance of $1,663.76, with interest from November 10, 1914, to December 6, 1915, the date of the entry of the final decree. As neither party has been entirely successful, there will be half costs in this court and in the District Court, and the final decree will be further modified accordingly. When the correct amount of principal, interest, and costs shall have been ascertained as of December 6, 1915, such amount will bear interest from December 6, 1915.