## COVER v. CHICAGO EYE SHIELD CO.
### No. 7849.

Circuit Court of Appeals, Seventh Circuit.
Aug. 13, 1942.

F. Allan Minne, of Chicago, Ill., for appellant.

Eugene Vincent Clarke, of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges, and CAMPBELL, District Judge.

SPARKS, Circuit Judge.

The defendant appeals from a decree on an accounting in a suit for patent infringement. Two separate issues are presented: (1) Whether the patentee is entitled to all the profits on a device conceded to infringe the two patents which were held valid and infringed, or whether the infringer is entitled to apportion the profits, being liable only for those arising out of the use of the elements of its device directly infringing the patents, and not for those other elements involved in the device; and (2) whether a device constructed after the decision of this court, for the specific purpose of avoiding the use of those elements as to which appellee's patents were held valid and infringed, but following the general form of the infringing device and the patented structure, infringes the patent, entitling appellee to accounting as to it. The structures relate to a respirator for use in protecting against poisonous dusts and smoke.

In order that we may the better understand the issues here involved, it is necessary for us to review briefly the issues of the first appeal, our opinion in which appears in 7 Cir., 111 F.2d 854. The suit was for infringement of six patents issued to appellee for various improvements of a respirator. Two of those patents, involving different types of valves, were held not infringed; a third, covering a face-cloth, was held invalid; one claim of a fourth, covering a foldable, wedge-shaped body portion, was held invalid, and a second claim, covering somewhat the same details with the addition of a flutter valve, was held not infringed. A fifth patent, No. 2,-112,270, pertaining to a bulbous housing covering the exhale valve, was held valid and infringed. As to this patent, there was no serious controversy on the accounting before the master or the District Court, and no question is raised here.

We described the three claims of the sixth patent, No. 2,120,231, which were sued upon, as follows in our former opinion: "Claim 1 discloses a respirator body portion and a removable filter box mounted eccentrically of the filter box on the side of the body portion and adjustable about the mounting. Claim 2 is the same as claim 1, except that it adds an exhaust valve and discloses a plurality of removable filter boxes. Claim 3 discloses a body portion provided with an exhaust valve and a removable and adjustable filter element, and means for securing the filter element to the body by means of an open flanged cap and a locking ring adapted to thread on the cap."

While we were not without doubt as to the patentability of the combination of old elements there involved, we thought the evidence insufficient to overcome the presumption of validity arising from the decisions of the Patent Office and the District

Court. Hence we affirmed the decision of the District Court that the disclosures were not anticipated by the prior art, and that they were valid and infringed. Obviously our decision was intended to apply only to those disclosures which were not anticipated by the prior art, and was not intended to reach those portions of appellee's device which were old in the art. The use of old elements to accomplish new results entitles a patentee to a patent on the new feature resulting from the use of the old elements, not on the old elements themselves, hence the use by others of the old elements in a different combination, without accomplishing the new result, does not constitute infringement. We make this statement at this time for the reason that it now appears that we did not sufficiently define and limit the scope of appellee's patent, hence upon remand, the question arose as to whether appellee was entitled to profits upon the infringing device as a unit, or only the particular combination of elements held valid and infringed.

The drawings and specifications of the patent disclose a reversible rubber facepiece and a pair of removable, circular, metal filter holders with one side perforated. Inside these holders were placed removable felt and paper filter elements. Instead of the metal holder, appellant devised an all-fabric filter element, made of two pear-shaped pieces of felt stitched together, with a spring inside to hold the sides apart. Hence, in external appearance, appellant's device differs greatly from that of the patent drawings, but because appellant adopted the removable, adjustable filter elements, we agreed with the District Court that it infringed appellee's patent.

After remand of the cause from this court for further proceedings in accordance with our opinion, the District Court referred it to a master for accounting. The master thereupon heard all the evidence offered with respect to the accused devices —the number sold, and the costs, and also as to the patents infringed (particularly No. 2,120,231, since there was little controversy over the other patent whose validity and infringement this court upheld). Controversy immediately developed between the parties as to the extent of infringement by appellant in its admittedly infringing device, and whether the new device produced after the decision of this court did or did not infringe.

We are impressed with the fairness and understanding with which the master conducted the hearings and elicited the pertinent evidence.

According to the facts found by the master, all of which are amply supported by the evidence, appellant designed and began production and marketing of the accused device some time prior to the issuance of the two patents held valid and infringed by this court. Appellee had kept his applications secret, hence appellant had no notice of the patents until statutory notice in the case of the '270 patent, and filing of the complaint in the case of the '231 patent, and these dates were fixed for the beginning of the accounting period.

Appellant's practice with regard to its records of labor and material costs was to run off sample tests from time to time. The evidence showed that for these tests, each employee having anything to do with the labor or materials for the various operations made a memorandum of whatever he provided. These memoranda were often on loose scraps of paper and were not intended to become a part of the permanent records, being preserved only until the figures were transcribed for the permanent records. Hence the master found that there was no confusion of records or attempt to falsify them, and that the records produced by appellant were those kept in the usual course of business and were open to inspection by appellee, contrary to the latter's charge of destruction of original records after decree awarding the accounting.

The master found that appellee's invention in its general shape and form was not new, and that all that was new or novel about it was the adjustable feature, after particularly careful and thorough inquiry into this phase of the case. The following colloquy took place between the master and counsel for appellee:

"Mr. Clarke: In order for the '231 patent to be infringed it is necessary that there be a removable filter box adjustable about the mounting, as in claim 1, or else a plurality of filter boxes adjustable about the mounting, as in claim 2, or else as in claim 3, that there be an adjustable filter element. That filter element must be adjustable.

"The Master: Does it follow that this is correct, Mr. Clarke, the mere fact that the filter box or filter holder, whatever it is,

the fact that that was merely removable would not make it infringe your client's patent?

"Mr. Clarke: It would have to be adjustable also.

"The Master: As well as removable?

"Mr. Clarke: That is correct.

"The Master: I think then I see very clearly what the question is."

The master found that appellee did not in his respirator give the public anything new except the adjustable features of the filter elements which were essential to his particular form of reversible respirator and undoubtedly a great convenience to a non-reversible respirator face-piece, but that other respirators were on the market with the approval of the Bureau of Mines, enjoying large commercial success, and the invention added nothing to the efficiency of the respirator in so far as it pertained to the removal of noxious gases and poisonous dusts, the real purpose of a respirator which was necessary to meet the approval of the Bureau of Mines. He also found that the all-fabric filter box or filter element which doubled the filter area was not covered by the patent in suit, but had been manufactured and produced by appellant and given to the public before appellee began to manufacture his fabric filter box. However, the device subsequently produced by appellee adopted the all-fabric filter elements used by appellant, and during the course of the hearings, appellee did have considerable to say about the increase in filter area which he claimed resulted from his structure.

The master found, and there is ample evidence to support such finding, that the first essential to the sale of respirators to customers requiring them for the removal of noxious gases and poisonous dusts incidental to some industries, is the approval of the Bureau of Mines, and that without such approval, respirators cannot be sold for use of workmen in such industries. He further found that the device of the patent was not the only one to receive such approval, but that a device of the prior art (Punton, No. 2,019,928, relied upon by appellant in the infringement phase of this suit as well as here) had achieved large commercial success without having the feature of adjustability; and that appellee himself had had considerable success with a respirator having metal filter boxes which were neither removable nor adjustable.

From these findings, the master concluded that the entire market value of appellant's infringing device was not attributable to the patent, hence the profits resulting from the sale of the device must be apportioned between them. He also concluded that prior to the filing of the bill of complaint, appellant was not a willful infringer, and up to that time, the infringement was inadvertent. He thereupon stated the account, finding appellant liable for $449.70 for infringement by the accused device of patents '270 and '231.

After the decision of this court, the appellant adopted a device (referred to as Exhibit 100) deliberately designed to avoid infringement by the use of metal projecting teeth on the filter elements which engage the corresponding rubber teeth on the face-piece and interlock therewith, thereby preventing adjustment of the filter elements about the face-piece. The evidence showed that appellant found the optimum position for its filter elements and locked the related parts at that point. Appellee attempted to prove that the means adopted for the locking did not accomplish the purpose, and that in fact, the locking means could be unlocked and adjustment accomplished. As to this, the master stated:

"* * * It was demonstrated that it was possible to unscrew the threaded locking cap and the threaded locking ring and adjust the filter elements, but the position to which they could then be adjusted would make the respirator impractical, because it would interfere with the vision of the wearer, and in the adjustment would cause a distortion which would impair the usefulness of the respirator by causing leaks of air which would admit dust, when the purpose of the respirator is to exclude the same.

"If plaintiff's exhibit 100, defendant's present respirator, were to be adjusted a tool would be necessary to unlock the ring such as was employed by plaintiff. * * * exhibit 100 could not be adjusted except by distorting it, and arranging the parts in a manner not intended by the manufacturer."

The master concluded that appellant should not be required to account for profits derived from the device, both because it did not infringe, and because it was not within the scope of the reference to him. He also recommended payment of costs and fees by appellant.

Appellee filed objections to the master's report, and upon hearing, the court overruled those relating to patent '270, as to which no question is raised before us. However, with respect to patent '231, the court sustained appellee's objections, holding that there was no basis for the apportionment of profits, relying upon the decision of this court in Peerless Equipment Co. v. W. H. Miner, Inc., 7 Cir., 93 F.2d 98. He also held that appellant had destroyed its original records, and that plaintiff accepted appellant's figures on the number of devices sold, the price received, and the cost of the same, and net profits, although appellant admitted its inability to separate selling and administrative expenses. He further held that Exhibit 100 was an attempt by appellant to get the advantage of the patent without being charged for its infringement, hence that appellant was liable for profits on it, and appellee entitled to an accounting of such profits. Since there had been no data as to the profits on this device in the hearing before the master, the court permitted appellee to introduce such evidence on the hearing on the report, instead of again referring the matter to the master to bring the accounting up to date. He then rendered judgment in favor of the plaintiff in the amount of the total net profits resulting from appellant's sale of the admittedly infringing device and Exhibit 100, amounting to $10,326.

We are convinced that the District Court erred in holding that the decision in this case was controlled by our decision in the Miner case. The latter was based on our conclusion that the success of the device involved there (a draft gear which acted as a shock absorber, for use on railroad cars) resulted from the use of the element covered by the patent, which was, therefore, so essential that the patentee was entitled to the entire profits from the sale of the infringing device. We commented on the rule that, "the mere carrying forward of the original thought with a change only in form, proportion or degree, in doing the same thing the same way by substantially the same means, but with better results, is not such invention as will sustain a patent * * *" but held that rule inapplicable "when different means are employed, followed by success where failure theretofore existed." Moreover, on petition for rehearing, we specifically disclaimed any intention of holding that a patent could be infringed by the practice of any prior art, and refused to pass on the question whether defendant infringed by use of a subsequently adopted structure in which the infringing element was said not to be essential to the desired result. We do not agree with the holding of the District Court that this case controlled the decision of the case at bar.

The factors to be considered in the decision of a case involving infringement of a combination patent are quite fully set forth in the cases, Westinghouse Co. v. Wagner Mfg. Co., 225 U.S. 604, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.,N.S., 653, and Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U.S. 641, 35 S.Ct. 221, 223, 59 L.Ed. 398. In the former case, the Court [225 U.S. 604, 32 S.Ct. 694, 56 L.Ed. 1222, 41 L.R.A.,N.S., 653] stated, "Where a patent, though using old elements, gives the entire value to the combination, the plaintiff is entitled to recover all the profits. * * * But there are many cases in which the plaintiff's patent is only a part of the machine and creates only a part of the profits. His invention may have been used in combination with valuable improvements made, or other patents appropriated by the infringer, and each may have jointly, but unequally, contributed to the profits. In such case, if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains."

The Dowagiac case, supra, involved an *improvement* in grain-drills, and the Court held that the patentee was entitled to only that portion of the profits which resulted from his improvement, stating, "We think the evidence, although showing that the invention was meritorious and materially contributed to the value of the infringing drills as marketable machines, made it clear that their value was not entirely attributable to the invention, but was due in a substantial degree to the unpatented parts or features." We think this language peculiarly pertinent to the facts of the case at bar. The patentee recited, "My invention relates to improvements in respirators," and each claim began with the phrase, "In a respirator." Our study of the record convinces us that the evidence conclusively demonstrates the correctness of the master's finding that, "The plaintiff's invention in its general shape and form was not new * * *. All that was new or novel about it was the adjustable

feature, * * *" and his conclusion that the entire market value of the device was not due to the invention, and the profits should, therefore, be apportioned.

Appellee's theory, which was sustained by the District Court, was that the patent covers "a unitary complete article, not an attachment," and that the "entire market value of the infringing device is due to the plaintiff's invention and the inventor is entitled to all the gains and advantages of which his invention is susceptible." Among the advantages which the court found were solely attributable to the invention were increased filter area which appellee contends would be impossible without the use of his flanged cap and flanged locking ring; approval by the Bureau of Mines which the court found was obtained for the first time on a practical respirator; and increased ease of breathing. Although the court found that there was no evidence to the contrary as to these facts, the master found otherwise, and we think his findings are amply sustained by the evidence. It must be remembered that the patent did not cover the all-fabric filter elements, but instead, provided a removable casing like that of the prior art (Punton) except for the fact that both halves of the shell designed to enclose the filter element were removable instead of only the outer portion, as in Punton. We must also note a fact disclosed by the record on the former appeal, to which the court does not refer in its findings, that appellee testified that the "double filter on each side of the respirator" was not shown in the patent in suit, and was the subject of an application for another patent, the status of which was not shown of record, although the application had been filed in August, 1937.

We might have thought that removability of the entire filter element even without adjustability constituted infringement were it not for the express inquiry of the master as to this point, and the express statement of counsel that adjustability as well as removability was essential to infringement. Of course, it is true, as appellant contends, that filter elements, separately enclosed in various types of casings, had long been known to the art. Moreover, appellee may not claim novelty in his employment of open flanged caps and threaded locking rings as such, inasmuch as they also had long been known. His patent, then, is confined to their use to provide a filter element adjustable about the mounting.

■ Our study of the record convinces us that the findings of the master with respect to the device accused in the original suit and appellant's cost records pertaining thereto were supported by a preponderance of the evidence, and should, therefore, have been accepted by the court. Arrow Distilleries, Inc., v. Arrow Distilleries, Inc., 7 Cir., 117 F.2d 636.

■ With respect to Exhibit 100, designed to avoid infringement of the patent, we think the evidence showed that adjustment could be accomplished only by such distortion as impaired its usefulness as a respirator, and by means of a special tool not customarily in the hands of a workman, and further, that no useful purpose could be accomplished by such adjustment, since appellant chose the optimum position for its filter elements in the first place and there was no necessity for adjustment. Hence we agree with the master's conclusion that the device did not constitute a colorable imitation of the patent structure, and appellant should not be required to account for its profits.

Appellant filed objection to the recommendation of the master that it pay all the costs of the suit, including the fees of the court reporter and the master. It incorporated that objection in its statement of points on this appeal, but, according to its brief, it has not urged it before this court because of the ruling of the District Court adverse to it as to the main issues, and the refusal of that court to transmit the offer of proof relating thereto, consideration of which was postponed pending possible reversal by this court of the decree. It is therefore unnecessary for us to consider the question here, but we understand that appellant has not waived its objection.

The decree is reversed and the cause remanded for further proceedings consistent with this opinion.