## O. & W. THUM CO. v. DICKINSON.

(District Court, W. D. Michigan, S. D.   January 29, 1918.)

TRADE-MARKS AND TRADE-NAMES ⨺98—SUITS FOR INFRINGEMENT—ACCOUNTING BY INFRINGER.

> On an accounting for damages and profits by an infringer of a trademark, defendant may, in the discretion of the court, be required to file an account showing the names and addresses of all purchasers of infringing goods.

In Equity.   Suit by the O. & W. Thum Company against Albert G. Dickinson.   On review of master's order.   Affirmed.

See, also, 245 Fed. 609, 158 C. C. A. 37.

Chappell & Earl, of Kalamazoo, Mich., for complainant.
Butterfield & Keeney, of Grand Rapids, Mich., for defendant.

SESSIONS, District Judge.   The master's order, requiring defendant to file his account and to include therein the names and addresses of all purchasers of goods bearing the infringing trade-mark, is in the form used and employed for many years in this district in

accountings of like nature, and should be approved, unless it invades some substantial right of defendant, or violates some established rule of practice, and thus constitutes an abuse of discretion. Equity rule 63 (198 Fed. xxxvii, 115 C. C. A. xxxvii) prescribes the form and not the contents of the account. An account is none the less "in the form of debtor and creditor" because it is complete and contains such matters of detail as are essential to the determination of the rights of the parties. Independently of the rule, it lies within the discretion of the court to require the defendant to disclose in his account such facts as are necessary to show, not only his own profits from his wrongdoing, but also the extent of the injury otherwise done by him to the plaintiff.

The finding of the Circuit Court of Appeals that defendant has been a willful and persistent trespasser upon plaintiff's rights is binding upon this court, and constitutes the controlling rule of decision in this case. At best, defendant occupies the position of a trustee ex maleficio and must account as such. The primary object of requiring an unfaithful trustee "to bring in his account is to compel discovery from him as to the details of the transaction under investigation." Defendant is not entitled to protection against the consequences of his own malfeasance, and if the full and fair disclosure, which the law requires him to make, incidentally involves some personal loss or business disadvantage, the blame therefor rests upon himself alone. Courts should not be so tender of his claimed rights as to destroy the very purpose which the rule was designed to accomplish, or to jeopardize or sacrifice the adjudicated rights of plaintiff.

The claim of defendant that he ought not to be required to disclose the names and addresses of his customers might rest upon a somewhat more substantial foundation, if the profits made by him in the manufacture and sale of the infringing goods alone were involved; but the accounting is ordered to ascertain both his gains and profits and the damages suffered by plaintiff. In a recent petition defendant has averred that he has made no profits. If this averment is true, and he cannot now gainsay its truth, plaintiff will be limited in its recovery to the damages (as distinguished from the infringer's profits) it has sustained. An important element of such damages, if any, may be sales of goods bearing the infringing trade-mark, which have prevented sales by plaintiff of its own goods to its own customers. Whether any such sales have been made cannot be learned until after the discovery of the names of the purchasers of infringing goods from defendant. An account merely stating dates, amounts, and prices would afford little, if any, assistance in the determination of this important question. To hold that plaintiff is not entitled to such information until after the filing of his account and exceptions thereto, and not even then unless, possibly, it can be obtained from an examination of the defendant either viva voce or upon interrogatories, would be to create and to invite the delays which the rule was intended to prevent.

Decisions of District Courts, which seem to rule differently, have not been overlooked. In some vital respects the cases cited differ materially from the present one. Those cases, in themselves, when

carefully examined, particularly as to dates, furnish glaring examples of the delays caused in some measure by following the rule of practice therein approved. In a mandamus proceeding in one of the cases, the opinion of the Court of Appeals is in harmony with the views herein expressed. In re Beckwith, 203 Fed. 45, 121 C. C. A. 381. The whole trend of modern decisions and rules of procedure is to eliminate delays wherever possible, and courts ought not to permit the use of equity rule 63 as an instrument to produce the serious evil which it was intended to remedy.

The order of the master is approved and affirmed.