AMMON & PERSON v. NARRAGANSETT DAIRY CO., Limited.

(District Court, D. Rhode Island.   July 31, 1918.)

No. 74.

1. TRADE-MARKS AND TRADE-NAMES ⬅93(3)—INFRINGEMENT—EVIDENCE.
    In suit to restrain defendant from using the word "Queen" as a trademark for oleomargarine, *held*, under the evidence, that plaintiff was entitled to injunction against infringement of trade-mark "Queen of the West," and against the use of the word "Queen" in connection with sale of oleomargarine.

2. TRADE-MARKS AND TRADE-NAMES ⬅61 — INFRINGEMENT — WHAT CONSTITUTES.
    The rules applicable to the use of the same name on distinct kinds of goods are inapplicable in cases where the product is the same, and the only difference is in the size or form of the receptacle or package in which the product is sold.

3. TRADE-MARKS AND TRADE-NAMES ⬅59(5)—INFRINGEMENT—WHAT CONSTITUTES.
    The unnecessary adoption of a part of plaintiff's trade-mark, a part so substantial as to have become a trade-name or nickname for the goods, is generally regarded as an infringement.

4. TRADE-MARKS AND TRADE-NAMES ⬅59(5)—INFRINGEMENT—WHAT CONSTITUTES.
    The use by a defendant of a trade-mark identical with a name which has been derived from plaintiff's trade-mark proper, and has become sufficiently descriptive of plaintiff's goods, is the adoption of a mark which will cause its goods to bear the same name in the market.

5. TRADE-MARKS AND TRADE-NAMES ⬅57—INFRINGEMENT—WHAT CONSTITUTES.
    Neither subtractions from nor additions to a trade-mark proper will avoid infringement, when such imitation as is likely to lead to confusion still remains, despite the change.

In Equity.   Bill by Ammon & Person, a corporation, against the Narrangansett Dairy Company, Limited.   Decree for plaintiff.

Edwards & Angell, of Providence, R. I., for plaintiff.

Wilson, Gardner & Churchill, of Providence, R. I., for defendant.

BROWN, District Judge.   This is a bill in equity to restrain the defendant from using the word "Queen" as a trade-mark for oleomargarine.   The defendant, by counterclaim, seeks a similar remedy against the use of the word "Queen" by the plaintiff.

The plaintiff, Ammon & Person, is a corporation of the state of

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

New Jersey, having its principal place of business in Jersey City, and the defendant, Narrangansett Dairy Company, Limited, is a corporation of the state of Rhode Island, with its principal business at Providence, R. I.

It is proved that the plaintiff's predecessors had applied the trademark "Queen of the West" to oleomargarine sold by them before September 30, 1891, and that the plaintiff has continued to use that trademark for many years. The defendant has proved that from 1909 to 1915 the Narragansett Dairy Company, an earlier Rhode Island corporation, used the word "Queen" alone as a trade-mark for oleomargarine. Afterwards, on February 8, 1912, the plaintiff filed its application for registration of the trade-mark "Queen," which was registered April 21, 1914.

Upon its reply brief the plaintiff says:

"The defendant is in no worse position, and the plaintiff is in no better position, by reason of the registration of the word 'Queen,' so far as this proceeding is concerned, than if it had not registered the word."

[1] The primary question is whether the evidence of its long-established use of the words "Queen of the West," applied to oleomargarine, is sufficient ground for an injunction against the subsequent use of the word "Queen" by the defendant, or would have been sufficient against the former Narragansett Dairy Company, which began such use in 1909. For the decision of this question it is unnecessary to determine whether the defendant has succeeded to the rights, if any, of the earlier Narragansett Dairy Company. It is true that a question of estoppel is raised, and the testimony of officers of the former Narragansett Dairy Company and of the vice president of the plaintiff was offered on that issue. This testimony was given orally, and it appeared to me that witnesses on each side were testifying as to matters of which they had a very indistinct recollection. From this testimony I am unable to find that the use of the word "Queen" by the earlier Narragansett Dairy Company was brought to the attention of the plaintiff in 1909 or 1910, or that there was any discussion concerning a slip of paper upon which was written in pencil the word "Queen." The witnesses on both sides were testifying to matters occurring seven or eight years before, their recollection was far from clear, and the testimony does not satisfy me that there was any notice to the plaintiff, or inaction on its part, or knowledge sufficient to support the defense of estoppel even were the defendant entitled to rely upon any estoppel of the plaintiff against the former Narragansett Dairy Company, which it is unnecessary to decide.

The plaintiff has proved, not only the use of the words "Queen of the West" as a trade-mark proper applied to receptacles for oleomargarine, but produces a number of trade circulars in which its product is referred to by the shorter name "Queen," and has also produced testimony to the effect that it was common for customers to describe plaintiff's goods by the shorter name. This testimony is credible, and according to common experience; and this preceded any other use of the word "Queen" alone in connection with oleomargarine.

While there is some uncertainty in the evidence as to the sale of

goods by the plaintiff with the word "Queen" alone affixed thereto before the date of the application for registration, February 8, 1912, the evidence shows the earlier use of the word "Queen" alone as a trade-name descriptive of plaintiff's goods—a trade-name derived from the plaintiff's technical trade-mark, "Queen of the West."

The plaintiff, having associated its goods with the word "Queen," whether used alone as a trade-name or as a part of the entire trade-mark "Queen of the West," contends that the use of the name "Queen" by defendant as a trade-mark has such obvious tendency to confusion of the goods of the plaintiff with the goods of the defendant as to make such use by the defendant an infringement of its prior right.

[2] There is much testimony in the case as to the different forms of packages to which the words "Queen of the West" and "Queen" were applied; but, as they were all applied to the same product, oleomargarine, I think no substantial distinction can be based upon differences in the packages, or upon the respective dates at which plaintiff and defendant, or the former Narragansett Dairy Company, applied the word "Queen" to cartons or cases rather than to tubs. The rules applicable to the use of the same name on distinct kinds of goods seem inapplicable in this case, where the product is the same and the only difference is in the size or form of the receptacle or package in which the product is sold.

There is much discussion as to whether the word "Queen" is the "dominant" word of the trade-mark; but it is enough to say that it is so substantial a part of the trade-mark that, without the qualifying words "of the West," it has been extensively used as a sufficient description of the product to which is applied the whole trade-mark "Queen of the West."

[3-5] The unnecessary adoption of a part of a plaintiff's trade-mark —a part so substantial as to have become a trade-name or nickname for the goods—is generally regarded as an infringement. The use by a defendant of a trade-mark identical with the name which has been derived from a plaintiff's trade-mark proper, and has become sufficiently descriptive of plaintiff's goods, is the adoption of a mark which will cause its goods to bear the same name in the market. Neither subtractions from nor additions to a trade-mark proper will avoid infringement, when such imitation as is likely to lead to confusion still remains despite the changes. Hopkins on Trade-Marks, etc. (3d Ed.) § 138, p. 321, and section 113, p. 279; Saxlehner v. Eisner, Mendelson Co., 179 U. S. 19, 33, 21 Sup. Ct. 7, 45 L. Ed. 60; Thomas G. Plant v. May Co., 105 Fed. 375, 44 C. C. A. 534; Gordon's Dry Gin Co., Ltd., v. Eddy & Fisher Co. (D. C.) 246 Fed. 954.

Whether, upon the evidence in this case, the plaintiff is entitled to rely upon infringement of its registered trade-mark "Queen," applied for February 8, 1912, seems doubtful, in view of the uncertainty as to whether the word "Queen" alone had ever been affixed to goods sold by the plaintiff before that date. There is, however, sufficient evidence that before that date it had been used as a trade-name not affixed to goods. The trade-mark up to that time appears to have been the full term "Queen of the West." While it is not impossible

that under special circumstances the two marks, "Queen" and "Queen of the West," might subsist as distinct and equally valid trade-marks, sufficiently differentiated by the circumstances under which they had become known to the trade, I am of the opinion that it is not so in the present case, and that the defendant's counterclaim must be dismissed. The plaintiff's right in the present case seems to rest upon infringement of its unregistered trade-mark "Queen of the West" and of its trade-name, rather than upon any rights which it may have acquired by registration of the word "Queen."

As the case is presented, it seems doubtful whether the plaintiff is entitled to statutory remedies provided in sections 19 and 20 of the Trade-Mark Act of February 20, 1905 (33 Stat. 729, c. 592 [Comp. St. 1916, §§ 9504, 9505]), as amended by Act March 2, 1907, c. 2573, 34 Stat. 1251, and Act Feb. 18, 1911, c. 113, 36 Stat. 918, and Act Jan. 8, 1913, c. 7, 37 Stat. 649 (Comp. St. 1916, §§ 9490, 9491), which relate to registered trade-marks.

The bill, however, is between citizens of different states and contains allegations of proper jurisdictional amount, and is sufficient as a bill for an unregistered trade-mark.

The evidence fails to show that the defendant has adopted the word "Queen" with any intention of deceiving the public, or of appropriating the plaintiff's good will or trade reputation. The word "Queen" was used by the defendant apparently in good faith and in reliance upon its former use by the earlier company, which had used it since 1909. Mr. H. E. Possner, testifying as to the adoption of the word "Queen" at that time, said: "We simply thought of it; that is all."

There is no evidence in the case to show that in fact the goods of the defendant were ever mistaken for those of the plaintiff, or that any person was ever deceived in the purchase of oleomargarine by the use of the defendant's marks, or that the defendant has interfered with the plaintiff's market, or deprived it of any profits, or to show any elements of actual fraud.

1 am of the opinion that the plaintiff is entitled to an injunction against infringement of the plaintiff's trade-mark "Queen of the West," and against the use of the word "Queen" in connection with the sale of oleomargarine. Whether it is also entitled to an accounting, and to the destruction of prints, etc., under the provisions of the registration act, or to other relief, seems doubtful. Straus v. Notaseme Co., 240 U. S. 179, 36 Sup. Ct. 288, 60 L. Ed. 590. Upon these questions, however, counsel may be heard upon the settlement of a decree.

A draft decree may be presented accordingly.