AMMON & PERSON v. NARRAGANSETT DAIRY CO., Limited.

(District Court, D. Rhode Island. December 12, 1918.)

No. 74.

TRADE-MARKS AND TRADE-NAMES ⪻98—SUIT FOR INFRINGEMENT—RECOVERY OF DAMAGES AND PROFITS.

    The right to an injunction against the future use of a single word forming part of complainants' trade-mark, and which it afterward used alone, does not carry the right to an accounting, covering time when such word alone was only used by defendant in good faith, and on packages clearly identified as its own.

In Equity. Suit by Ammon & Person against the Narragansett Dairy Company, Limited. On complainants' motion for entry of decree.

See, also, 252 Fed. 276.

Edwards & Angell, of Providence, R. I., for plaintiffs.

Wilson, Gardner & Churchill, of Providence, R. I., for defendant.

BROWN, District Judge. Though the opinion already filed (252 Fed. 276) holds that the plaintiffs are entitled to an injunction, and that the defendant's cross-bill must be dismissed, yet it appears that the former Narragansett Dairy Company had used as a trade-mark

applied to goods the word "Queen" alone for about three years prior to any use of the word alone by the plaintiffs as a trade-mark applied to goods. This use by that company or by the defendant had been very substantial and continuous in New England and elsewhere from 1909 to September 29, 1915, the date of plaintiffs' notice to defendant; such use being without fraudulent intent to' imitate plaintiffs' goods, and so far as appears without actual deception of purchasers. This has a most important bearing on plaintiffs' right to an accounting of profits and assessment of damages.

The goods of both these manufacturers were sold as their own product to persons who ordered them as manufacturers. While plaintiffs' cartons for one-pound packages, bearing the word "Queen," first used in 1912, bore no marks indicating that Ammon & Person, the plaintiffs, who were wholesalers and not manufacturers, were connected in any way with the goods, the cartons of the two corporations were so conspicuously marked with their names as manufacturers that it is impossible to believe that any purchaser of these either at wholesale or retail, could have supposed he was getting goods of the plaintiffs. Were it not for the earlier use of plaintiffs' trade-mark, "Queen of the West," and evidence showing that this had been abbreviated to the trade-name "Queen," not used as a trade-mark before 1912, the plaintiffs would be entitled to no relief.

By reason of differences in the facts, Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713, seems insufficient to support defendant's cross-bill. Yet that case is important for the recognition that it gives to the rights of one who, in good faith and without notice, has built up a trade in a special territory, and to the principle that the earlier adopter may not monopolize marks where his trade has never reached, and where the mark signifies, not his goods, but those of another.

The plaintiffs' contention that the word "Queen" alone had become so associated with plaintiffs' goods, that it meant to the public plaintiffs' goods, and that therefore defendant's profits are presumably due to that meaning, finds little support in the evidence. The contention is based rather upon a theoretical presumption than upon any substantial testimony.

To apply in this case a presumption that purchasers who ordered goods from the defendant's factory, or who purchased goods packed in defendant's cartons (which could not be mistaken for plaintiffs'), did so because of any knowledge of plaintiffs' reputation or connection with the goods, would be highly unreasonable. Presumptions are never allowed against ascertained and established facts; when these appear, presumptions disappear. Lincoln v. French, 105 U. S. 617, 26 L. Ed. 1189.

Hamilton-Brown Shoe Co. v. Wolf Bros. Co., 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629, has slight application to the facts of the present case. In that case of fraudulent imitation the court applied the principle applicable in cases of tortious confusion of goods. 240 U. S. 262, 36 Sup. Ct. 269, 60 L. Ed. 629. It is to be noted that the exclusion from an accounting of sales, where the infringing mark was accom-

panied by matter clearly indicating that the goods were of the defendant's manufacture, was affirmed. 240 U. S. 255, 260, 36 Sup. Ct. 269, 60 L. Ed. 629. See, also? Wolf Bros. Co. v. Hamilton-Brown Shoe Co., 206 Fed. 611, 619, 124 C. C. A. 409. The rule applicable in cases of confusion of goods extends no further\than necessity requires. See cases cited in Bouvier's Law Dict. (Rawle's 3d Ed.) vol. 1, pp. 605, 606.

In Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 618, 619, 32 Sup. Ct. 691, 696 (56 L. Ed. 1222), it was said:

"The inseparable profit must be given to the patentee or infringer. The loss had to fall on the innocent or the guilty. In such an alternative the law places the loss on the wrongdoer."

But only in such alternative is the rule applicable. Whether such alternative exists is a matter of fact, and not of law. It would be altogether too sweeping a proposition to say that, irrespective of particular circumstances, a court should hold that a sale of goods bearing a trade-mark was due to such trade-mark; for it is familiar knowledge that in the sales of many goods bearing trade-marks the trade-mark is a negligible factor, and this would seem especially true of many ordinary articles of consumption. Whether or not things which are mixed can be separated cannot be determined as a matter of law. On the contrary, in many cases it may be quite obvious that marks affixed to goods could have played but an insignificant part in the sale. As was said (225 U. S. on page 620, 32 Sup. Ct. 696 [56 L. Ed. 1222]) in the opinion last cited:

"The rule, however, is not intended to penalize the infringer, nor to give the patentee profits to which he is clearly not entitled. So that where, by general evidence, expert testimony, or otherwise, it is shown that his patent is of relatively small value, it will often be possible to prove that, at the utmost, it could not have contributed to more than a given amount of the profits. Lupton v. White, 15 Vesey, Jr., 432–440. In such cases, except possibly against one who had concealed .or destroyed evidence or been guilty of gross wrong, the plaintiff's recovery cannot exceed the amount thus proved, even though it be impossible otherwise more precisely to apportion the profits."

The burden is upon the plaintiffs to prove the existence of profits attributable to their trade-mark and to demonstrate that they are impossible of accurate or approximate apportionment. 225 U. S. 622, 32 Sup. Ct. 691, 56 L. Ed. 1222.

The plaintiffs in this case are met by the fact that their trade-mark "Queen of The West" and the trade-mark "Queen" are not the same, but the resemblance is partial. That the word "Queen" alone, when applied as a trade-mark, did not mean to the public generally the goods of the plaintiff, but did mean for a period of about three years before the use of the trade-mark "Queen" the goods of manufacturers who sold the goods as their own product, and who had associated their own name with the word "Queen" so conspicuously as to exclude any reasonable presumption that the purchaser of cartons so marked, or the purchaser from salesmen representing the manufacturers, or who ordered their goods from the factory, could have been mistaken.

Under this state of things, it is evident that to call upon the defendant to produce a specific account of the goods sold upon orders sent to its factory, or taken by salesmen from purchasers who knew they

were getting the defendant's goods, would be inequitable, and that the expense and burden of such an accounting would be wholly disproportionate to any possible advantage that could result to the plaintiffs. The plaintiffs must establish their right to the assistance of a court of equity, not through the abstract propositions of law enunciated in cases of a different character, but upon the facts of the present case. There is no testimony that any mistake was ever made by purchasers. There is affirmative evidence that no mistake was made to the knowledge of the officials of the two Narragansett Dairy Companies.

The plaintiffs' equity rests upon its showing of a prior use of the trade-mark "Queen of The West" and of the trade-name "Queen." It is a hardship to the defendant that it should be deprived of the benefits of a trade-mark corresponding to the trade-name earlier used in connection with plaintiffs' business. The plaintiffs' right to an injunction is not free from doubt, but seems justified in order to prevent confusion likely to arise in the natural expansion of trade. 240 U. S. 420, 36 Sup. Ct. 357, 60 L. Ed. 713. In view of the peculiar circumstances of this case, it seems both impracticable and inequitable to impose upon the defendant the burden of an accounting or assessment of damages. Ludington Novelty Co. v. Leonard, 127 Fed. 155, 62 C. C. A. 269; Rushmore v. Badger Brass Mfg. Co., 198 Fed. 379, 117 C. C. A. 255; G. & C. Merriam Co. v. Saalfield, 198 Fed. 369, 377, 378, 117 C. C. A. 245; Worcester Brewing Corp. v. Reter & Co., 157 Fed. 217, 84 C. C. A. 665; G. & C. Merriam Co. v. Ogilvie, 170 Fed. 167, 95 C. C. A. 423; Keystone Type Fdy. Co. v. Portland Pub. Co. (C. C.) 180 Fed. 301, and cases cited.

While some of these cases relate to unfair competition rather than to trade-mark infringement, yet they discuss principles which seem equally applicable to both classes of cases in respect to the question of an accounting, since the common law of trade-marks is but a part of the broader law of unfair competition. See Hanover Milling Co. v. Metcalf, 240 U. S. 413, 36 Sup. Ct. 357, 60 L. Ed. 713.

The plaintiffs' draft decree is not in all respects in conformity with equity rule 71 (198 Fed. xxxviii, 115 C. C. A. xxxviii). The defendant's proposed draft seems both to conform to the rule and to cover all that plaintiffs are entitled to under this and the former opinion.

A decree in the form proposed by the defendant will be entered by the clerk as of this date.