### DICKINSON v. O. & W. THUM CO. O. & W. THUM CO. v. DICKINSON, A. K. ACKERMAN CO. v. O. & W. THUM CO.

(Circuit Court of Appeals, Sixth Circuit. October 9, 1925.)

Nos. 4113, 4114, 4126.

**1. Appeal and error ⊚⇒1099(3)—Decision on prior appeal in copyright infringement suit law of case.**

On appeal from decree of District Court, affirming master's report in matter of accounting for trade-mark infringement, decision on prior appeal as to fact of validity and infringement and as to defendant's unfair trade and competition is law of case and will not be re-examined.

**2. Appeal and error ⊚⇒1022(1)—Master's findings, concurred in by District Court, not disturbed, except for plain mistake.**

Where case is one properly referable under equity rule 59 (198 F. xxxv), master's findings, concurred in by District Court, though open to re-examination on appeal, will not be disturbed, except for plain mistake.

**3. Trade-marks and trade-names and unfair competition ⊚⇒98—Master held to have properly excluded particular items in taking accounting of profits for trade-mark infringement.**

Master taking accounting in trade-mark infringement case for period beginning particular date *held* to have properly refused to consider sales made prior to that date, though billed and invoiced subsequent thereto.

**4. Trade-marks and trade-names and unfair competition ⊚⇒98—Liability to account for profits not avoidable on theory that sales were due to merits of infringing product.**

One shown to have willfully infringed trade-mark cannot avoid liability to account for profits realized by urging that his sales were due exclusively to merit of his product or that no one could say what part was due to use of infringing trade-mark.

**5. Trade-marks and trade-names and unfair competition ⊚⇒98—Trade-mark infringer liable for entire profits from sale of infringing product.**

Trade-mark infringer is liable for entire profits from sale of infringing product, and complaining party is not required to show extent of profits attributable to use of infringing mark.

**6. Trade-marks and trade-names and unfair competition ⊚⇒98—Refusal to permit deduction of selling costs of goods in accounting for profits held proper, in view of infringer's confusion of such cost with selling costs of noninfringing goods.**

Where infringer, at time of judicial determination of fact of infringement, was authorized to sell goods on hand and in doing so wrongfully and unnecessarily confused the selling costs of such goods, and of noninfringing new goods, during accounting period, *held*, under Trade-mark Act 1905, §§ 19, 20 (Comp. St. §§ 9504, 9505), master properly refused to allow any deduction for selling costs of such infringing goods in accounting for profits thereon.

**7. Trade-marks and trade-names and unfair competition ⊚⇒98—Trade-mark infringer held not entitled on accounting for profits to credit for destroyed goods.**

Trade-mark infringer, destroying part of goods on hand at time fact of infringement was determined, in accounting for profits is not entitled to credit for cost of goods so destroyed.

**8. Trade-marks and trade-names and unfair competition ⊚⇒98—Factory repairs and depreciation held not legitimate part of deductible selling expense of infringing goods.**

Where court, at time of judicially determining fact of trade-mark infringement, authorized sale of infringing product then on hand, *held* cost of repairs and depreciation on infringer's factory buildings during following year were not legitimate part of selling expenses of goods on hand deductible in accounting for profits.

**9. Trade-marks and trade-names and unfair competition ⊚⇒98—Plaintiff held not estopped to claim profits awarded by master in excess of amount originally claimed.**

That plaintiff's attorneys claimed less amount as profits on infringing product, sale of which was authorized by court at time of judicially determining fact of infringement, than was found by master to be due, *held* not to estop plaintiff from claiming larger amount, where such claims were obviously based on mistake of law as to amount of deductions to which infringer was entitled.

**10. Trade-marks and trade-names and unfair competition ⊚⇒98—Findings of master that plaintiff had not sufficiently established claimed items of damage in trade-mark infringement suit held conclusive.**

Findings of master that plaintiff had not sufficiently established claimed items of damage in trade-mark infringement suit *held* conclusive.

**11. Trade-marks and trade-names and unfair competition ⬷93(1)—Plaintiff seeking damages for loss of sales or enforced reduction of price has burden of proof.**

Plaintiff in trade-mark or unfair competition case, seeking to recover damages for loss of sales or enforced reduction in prices, has burden of proof.

**12. Trade-marks and trade-names and unfair competition ⬷98—Refusal to triple or otherwise increase damages for trade-mark infringement held not error.**

Refusal to triple or otherwise increase award of damages under authority of Trademark Act 1905, § 19 (Comp. St. § 9504), held not error, in view of conditions under which sales were made.

In Nos. 4113, 4114: Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

In No. 4126: Appeal from the District Court of the United States for the Northern District of Ohio; Clarence W. Sessions, Judge.

Two suits by the O. & W. Thum Company, one against Albert J. Dickinson, and the other against the A. K. Ackerman Company. From the decree rendered in first suit, defendant appeals, and plaintiff cross-appeals. From the decree in second suit, defendant alone appeals. Decrees affirmed.

In No. 4113:

Willard F. Keeney, of Grand Rapids, Mich. (Roger C. Butterfield and Julius H. Amberg, both of Grand Rapids, Mich., on the brief), for appellant.

Fred L. Chappell, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich., on the brief), for appellee.

In No. 4114:

Fred L. Chappell, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich., on the brief), for cross-appellant.

Willard F. Keeney, of Grand Rapids, Mich. (Roger C. Butterfield and Julius H. Amberg, both of Grand Rapids, Mich., on the brief), for cross-appellee.

In No. 4126:

Willard F. Keeney, of Grand Rapids, Mich. (Roger C. Butterfield and Julius H. Amberg, both of Grand Rapids, Mich., on the brief), for appellant.

Fred L. Chappell, of Kalamazoo, Mich. (Chappell & Earl, of Kalamazoo, Mich., on the brief), for appellee.

Before DONAHUE and MOORMAN, Circuit Judges, and WESTENHAVER, District Judge.

WESTENHAVER, District Judge. The prior history of this litigation is in part disclosed in former opinions. See, 245 F. 609, 158 C. C. A. 37; (D. C.) 254 F. 219; 257 F. 394, 168 C. C. A. 434. The controversy involves an infringement by Dickinson of a trade-mark of the Thum Company applied to sticky fly paper, and also unfair trade and competition by Dickinson in marketing his competitive product. The Thum fly paper is designated in the record as "Tanglefoot," and Dickinson's as "Sticky Fly Paper," and sometimes merely as "Sticky." The Thum Company will be referred to herein as the plaintiff, and Dickinson and Ackerman will be referred to as the defendant, such being their respective relations to the original lawsuits.

After decision of this court (245 F. 609, 158 C. C. A. 37), finding plaintiff's trademark valid and infringed, and defendants guilty of unfair trade and competition, decrees were entered, appointing a master to state an account of profits and damages. In the Ackerman Case no evidence of profits and damages was introduced. Upon the filing of the master's report so finding, a final decree was entered that plaintiff should recover nothing. From this decree the defendant Ackerman has appealed.

In the Dickinson Case, much evidence was offered as to profits and damages. The master has returned an elaborate report covering fifty-seven pages of the printed record and dealing fully and in detail with the contentions of both parties. To this report, the defendant took twenty exceptions and the plaintiff twenty-five. All exceptions were overruled by the District Judge, and a decree entered in plaintiff's favor for such profits as were found to have been realized by defendant from his infringement, with interest from the filing date of the report. Defendant has appealed from this decree, assigning thirty-two errors. The plaintiff has taken a cross-appeal, assigning thirty-three errors. Both parties apparently continue in the same dissatisfied mental state on which this court commented in its opinion in 257 F. 394, 395, 168 C. C. A. 434. Defendant calls in question, as manifestly erroneous, every finding of fact and conclusion of law adverse to him, and reassigns as well the merits arising on the issues of trade-mark validity and infringement and unfair competition, despite the previous decision of this court. The plaintiff, however, does not urge in argument most of its exceptions or assignments of error, but limits the discussion to one item only in the mas-

ter's finding of profits and to certain adverse findings of the master respecting its several claims for damages. The scope of these respective contentions and the earnestness with which they have been argued has compelled an examination of the entire record.

[1] Defendant's assignments of error, challenging this court's previous decision as to the validity of plaintiff's trade-mark and its infringement and as to unfair competition, are made, we assume, only in order that the questions involved may be properly preserved for presentation by certiorari to the Supreme Court. Our former decision will be followed as the law of the case. This is the well-settled rule. As was said in Supervisors v. Kennicott, 94 U. S. 498, 499 (24 L. Ed. 260): "These questions are, therefore, no longer open; for it is settled in this court, that, whatever has been decided here upon one appeal, cannot be re-examined in a subsequent appeal of the same suit. Such subsequent appeal brings up for consideration only the proceedings of the Circuit Court, after the mandate of this court." See, to the same effect, Himely v. Rose, 5 Cranch. 314, 3 L. Ed. 111; Roberts v. Cooper, 20 How. 467, 15 L. Ed. 969; Clark v. Keith, 106 U. S. 464, 1 S. Ct. 568, 27 L. Ed. 302; Chaffin v. Taylor, 116 U. S. 567, 6 S. Ct. 518, 29 L. Ed. 727; In re Potts, 166 U. S. 263, 17 S. Ct. 520, 41 L. Ed. 994; Thompson v. Maxwell Land Grant Co., 168 U. S. 451, 456, 18 S. Ct. 121, 42 L. Ed. 539. Even if, as was said in Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152, and C. & O. Ry. v. McKell (C. C. A. 6) 209 F. 514, 126 C. C. A. 336, this is a rule of practice and not a limitation upon the court to re-examine on a later appeal questions decided on a former appeal, still no special facts are present in this case which were there said to justify a departure from the general rule. It follows that the decree in No. 4126 will be affirmed, and that all assignments of error raising the same questions in 4113 should be disregarded.

[2] Since both parties' exceptions to the master's report are directed mainly to his findings of fact, it is well to recall the rules of law in accordance with which such findings are to be reviewed. This case is not one in which the reference was by consent of parties, with power in the master to hear the evidence and determine the issues, like Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764, and Davis v. Schwartz, 155 U. S. 631, 636, 15 S. Ct. 237, 39 L. Ed. 289. It is an accounting case, properly referable under equity rule 59 (198 F. xxxv), and is controlled by the principles stated in Tilghman v. Proctor, 125 U. S. 136, 139, 8 S. Ct. 894, 31 L. Ed. 664; Callaghan v. Myers, 128 U. S. 618, 666, 9 S. Ct. 177, 32 L. Ed. 547; Boesch v. Graff, 133 U. S. 697, 705, 10 S. Ct. 378, 33 L. Ed. 787; Crawford v. Neal, 144 U. S. 585, 596, 12 S. Ct. 759, 36 L. Ed. 552; Camden v. Stuart, 144 U. S. 104, 118, 12 S. Ct. 585, 36 L. Ed. 363; Warren v. Keep, 155 U. S. 265, 267, 15 S. Ct. 83, 39 L. Ed. 144. It is not one in which the master's findings of fact have been disapproved by the District Court, but one in which, after mature consideration, the findings have been concurred in. Under these circumstances, while conclusions of law are always open to re-examination on appeal, the master's findings of fact, approved by the District Judge, will not be disturbed on anything less than a demonstration of plain mistake. See Ohio Valley Bank v. Mack (6 C. C. A.) 163 F. 155; Deupree v. Watson (6 C. C. A.) 216 F. 483, 485, 32 C. C. A. 543; Firestone Tire & Rubber Co. v. Riverside Bridge Co. (6 C. C. A.) 247 F. 625, 628, 160 C. C. A. 35; Tennessee Finance Co. v. Thompson (6 C. C. A.) 278 F. 597; Grossberger v. B. F. Goodrich Co. (6 C. C. A.) 8 F.(2d) 964, decided November 10, 1925.

This court (245 F. 609, 628, 158 C. C. A. 37) ordered an accounting of profits and damages subsequent to April 27, 1914, the date plaintiff first notified defendant that he was infringing, and denied, on the ground of laches, an accounting during any earlier period. It also authorized the defendant to market and sell as marked and dressed, such finished stock as it had on hand at the date of its decision, August 1, 1917, whether that stock was at its factory or in the hands of brokers and agents elsewhere. The master divided the accounting as to profits into two periods; one for the period prior to this court's decision, and the other for the made-up stock on hand. For convenience, and because both plaintiff and defendant kept their accounts and closed their books in yearly periods ending October 1, the accounting for the first period was stated to October 1, 1917, instead of merely to August 1. No complaint is made by either party on this ground.

[3] Only two complaints are made respecting the accounting of profits for the first period, of which notice need be taken. The master deducted certain sales made prior to April 27, 1914, but billed or invoiced as of May 1, 1914. His finding is that these sales were in fact made prior to April 27, but that

the billing of a later date was merely an incident fixing the time when the accounts would become due. His conclusion therefrom was that these sales were excluded from the accounting period by the terms of the order and the opinion of this court. Our view is in accord with that of the master. The goods had been sold, shipped, and delivered. They were not, on April 27, in the possession, under the control, or subject to the order of the defendant. If defendant, on receiving notice on this date from plaintiff that its trade-mark was infringed, had desired to comply therewith, it was not within its legal right to retake these goods. According to the law of sales, the title had already passed. The fact that they were billed as of May 1, pursuant to a practice long followed by both parties, of making this the due date, does not control the situation nor require a different conclusion. It was merely a means of extending credit to customers in order that they might have the chance to resell seasonable goods before being obliged to pay the purchase price.

[4] Defendant's main complaint is that the master charged him with the entire profits accruing from the sale of any infringing goods during this period. It is insisted that the burden was on plaintiff to prove that defendant had made profits attributable in whole or in part to the infringing use of its trade-mark, and that the evidence does not support a finding that there were any so attributable. It would seem that this contention is precluded by our former opinion. If it had been otherwise, an accounting of profits and damages would not have been ordered. Be this as it may, the master was plainly right in finding that defendant had made profits attributable in whole or in part to the use of plaintiff's trade-mark. It had already been conclusively established that defendant was a willful infringer of a valid trade-mark. He had made use of that trademark in marketing his product. In this situation he cannot urge successfully that his sales were due exclusively to the merit of his product, or that no one can say what part was due to the use of the infringing trademark and what part due to the merit of his goods and thereby escape liability.

[5] Under the facts found and proved, the rule of Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U. S. 251, 36 S. Ct. 269, 60 L. Ed. 629, is applicable. The infringer must account for the entire profits derived from the sale of the infringing goods. The recovery will not be limited to such amount as can be shown by direct and positive evidence to have resulted from the use of the infringing mark. The burden is not cast upon the plaintiff to attempt the impossible task of showing what part of defendant's profits are attributable to the use of the infringing mark and what part to the intrinsic merit of his goods or other causes. Whatever conflict in the previous decisions might be found was put at rest by that decision. Of the numerous cases supporting these rules, the following are typical: Graham v. Plate, 40 Cal. 593, 6 Am. Rep. 639, Regis v. Jaynes, 191 Mass. 245, 77 N. E. 774, both cited with approval in the Hamilton Shoe Co. Case; Sharpless Co. v. Lawrence (3 C. C. A.) 213 F. 423, 426, 130 C. C. A. 59; M. B. Fahey Tobacco Co. v. Senior (3 C. C. A.) 252 F. 579, 164 C. C. A. 495; Saxlehner v. Eisner (2 C. C. A.) 138 F. 22, 70 C. C. A. 452; Prest-O-Lite Co. v. Bournonville (D. C.) 260 F. 446. Defendant cites and relies on Ammon & Person v. Narragansett Dairy Co. (D. C.) 252 F. 276, Id. (D. C.) 254 F. 208; Id. (1 C. C. A.) 262 F. 880, 884. We are not satisfied that these cases intend to announce any views in conflict with the authorities cited, but, if they do, such views must be disregarded.

Most of the argument pertains to the master's findings of profits on sale of finished goods on hand. Our opinion permitted defendant to sell these goods "on giving satisfactory bond to account for such profits and damages resulting from the sale of the stock as plaintiff may ultimately be found entitled to." The District Court, by order entered December 19, 1917, fixed this bond at $20,000. It also approved defendant's new trade-name, the name of its fly paper, and of its design. On plaintiff's appeal, this order was affirmed. 257 F. 394, 168 C. C. A. 434.

The master first found defendant's gross receipts from its sales of finished stock from October 1, 1917, to October 1, 1918. This sum of $83,098.02 is not questioned by either party. Section 19, Trade-mark Act 1905 (U. S. Comp. St. § 9504), casts the burden in ordinary cases upon the infringer to prove all elements of cost which are to be deducted. It provides: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost which are claimed." Certain costs were deducted as to which no question arises. These consist of manufacturing costs, salesmen traveling expenses, commissions, discount, office salaries, collection expense, lost accounts, and rebates. Whether the method of ascertaining these

costs or the amount thereof is correct is therefore immaterial. The master, however, wholly disallowed certain claimed items, viz. indirect labor, fuel, building repairs, cartage, storage, insurance, general expense, taxes, destroyed goods, and depreciation of buildings. He also allowed part only of the items claimed for freight and interest. The aggregate of such disallowed items is $14,156.85. Defendant complains bitterly of the disallowance of each of these several items.

[6] The master, in our opinion, adopted and followed the correct rule of law. He cast on the defendant the duty of proving these items and refused to allow them, because defendant had wrongfully and unnecessarily confused the goods on hand and the cost and expense of marketing them with its new goods and the cost and expense of its general manufacturing and selling operations during the accounting period. Upon the filing of this court's opinion August 1, 1917, defendant knew his rights and obligations. The made-up goods might, under section 20, Trade-mark Act (U. S. Comp. St. § 9505), have been ordered destroyed. Defendant, on the basis of his October 1, 1917, inventory, had invested therein more than $50,000. The permission to sell was in order to save the defendant 'from the destruction of this investment. In availing himself of that privilege he was charged with the duty of keeping that stock and the cost and expense of marketing it, separate from his other operations. He should and must have known that he was entitled to no deductions from the sale price except such as were incident to the making of such sales and as pertained strictly to these goods. By failing to do so, but, on the contrary, commingling the same with his other product and operations without keeping or attempting to keep any records or accounts whereby the selling cost and expense attributable to these goods could be separated from his other operations, he brought himself within the principles of Westinghouse v. Wagner, 225 U. S. 604, 625, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Hamilton-Brown Shoe Co. v. Wolf Bros. Co., 240 U. S. 251, 260, 36 S. Ct. 269, 60 L. Ed. 629; Hart v. Ten Eyck, 2 Johns. Ch. (N. Y.) 62, 108; Brennan & Co. v. Dowagiac Mfg. Co. (6 C. C. A.) 162 F. 472, 476, 89 C. C. A. 392; and other cases. All the inconvenience and loss from the confusion is thrown upon the party who produces it; and this rule applies, even though the innocent victim's share in

the property wrongfully and inextricably commingled may apparently be a small part of the total. On this proposition the learned District Judge said: "Neither convenience, expediency, economy, nor anticipated saving justified defendant's conduct in mingling the infringing and noninfringing goods. It may well be doubted that, if timely objection had been made, there could have been allowed any deduction for expenses of sale which were inseparable except by some rule of apportionment." This is at least true as to such expenses as it was reasonably practicable to keep separate.

The master's characterization of defendant's conduct does not seem to us unduly severe. Defendant, immediately upon our former decision, promptly arranged to continue his fly paper business, changing only his trade-name and the name of his paper and its design. As early as November 26, 1917, he presented a petition representing that the manufacturing season of "Sticky" fly paper for the year 1918 was at hand and procured the court's approval. It appears that he continued his business in all other respects just as if nothing had happened. All transactions pertaining to factory operation, production, and marketing of current product of new design, sale and distribution of old and new product, were carried on as one operation without any attempt whatever to segregate the made-up stock or to keep any separate record of its selling expenses. In lieu of any definite record, defendant's expert undertook to apportion the disputed items, using as a basis average inventory or number of cases sold. All agree that separation could be made in no other way. In our opinion, the master was right in refusing to accept this substituted method and in applying the rules of law applicable to a wrongdoer who knowingly confuses and commingles trust property with his own so that no separation can be later made.

[7, 8] No useful purpose will be subserved by reviewing the evidence or discussing each rejected item in detail. It is sufficient to say that the master's conclusion as to each rejected item meets with our approval. As to all of them, with the exception of interest and general expense, it was easily practicable to have kept a separate record. As to the interest, the apportionment and allowance made by the master is not unfavorable to the defendant. As to the destroyed goods, the master was plainly right in rejecting the claimed credit. If defendant failed to avail himself of the privilege of

selling the made-up stock to get out of what he had invested in it, he was within his right; but he is not entitled to make up this loss at plaintiff's expense by deducting it from the profits on the part of the stock so sold. Plainly, repairs and depreciation on factory buildings in the year 1918 are not a legitimate part of the selling expense of stock on hand August 1, 1917.

[9] One item only calls for separate comment. It is urged that the master found the defendant's profits on the sale of made-up stock to be in excess of the amount claimed by plaintiff. Plaintiff's counsel, in his principal brief filed with the master, urged that the profits on goods sold after decree amount to $19,575.17. The master found profits on goods sold to October 1, 1918, $24,124.49; on goods sold thereafter to June 15, 1919, $1,489.87; and on goods then unsold, $799.-91—aggregating $26,414.27. It is not clear that plaintiff's claim applied to any period except prior to October 1, 1918. Defendant's contention is that plaintiff is estopped by its counsel's position from claiming, and that the master was wrong in finding a larger sum. Except for this contention, as already appears, our view is that the master's finding was correct. The difference between plaintiff's claim and the master's finding, results from the rejection by the master of certain credits which the master found, for reasons approved by us, ought not to be allowed. It seems that plaintiff and its expert accountant were disposed to be more liberal in permitting arbitrary apportionments. The mistake, if there was one, pertained rather to the law than to the facts. No good reason is perceived why an estoppel arises in defendant's favor. Plaintiff was insisting at all times that it was entitled to all of defendant's profits and also that credit should not be given against the selling price of made-up goods where there had been confusion and no definite separation could be made. Counsel's characterization of evidence and mistake of law in argument is not the equivalent of claims made in a pleading which preclude a larger recovery or proof to the contrary. We agree with the learned District Judge that counsel's position resulted solely from a mistake, and that none of the essential elements of estoppel exist, and hence are unwilling to reverse on this ground a finding of the master approved by the District Court.

[10] Plaintiff's assignments of error, now insisted on, remain to be considered. Exception is taken to the refusal of the master to allow certain items of claimed damages.

The items of damages now contended for are: (1) Profits plaintiff would have made on the additional business that would have accrued to it had defendant not made his infringing sales; (2) damages suffered by being compelled to sell its goods at a reduced price of 10 cents per case because of defendant's competition; (3) damage resulting from defendant's sale of its goods at 10 cents per case less than the price which defendant should have charged for its goods; (4) damages due to defendant's sales of its made-up goods at 10 cents a case less than that for which they should have been sold; (5) damages to plaintiff's business due to the inferior quality of defendant's goods. These and other items of damage claimed by plaintiff aggregate approximately $475,-000. All were disallowed by the master because not proved with adequate clearness. It is our view that the master was plainly right as to the rules of law adopted and applied by him. His findings on the evidence are within the rule which forbids us to disturb a master's findings based on the evidence, particularly after the approval thereof by the District Court.

[11] When a plaintiff in a trade-mark or unfair competition case seeks to recover damages, the burden is on him to prove by competent and sufficient evidence his lost sales, or that he was compelled to reduce prices as the result of his competitor's wrongful conduct. There is no presumption of law or of fact that a plaintiff would have made the sales that the defendant made. In this case there is no sufficient, much less conclusive, evidence to show that plaintiff would have made all or any substantial part of the sales made by the defendant. Nor is there any adequate, much less conclusive, evidence that plaintiff reduced its price as a result of defendant's wrongful conduct. The evidence, on the other hand, is quite clear and convincing to the contrary. The same observations apply to the claim of damages to plaintiff's business from the inferior quality of defendant's product; it is not supported by adequate proof. For decisions showing the burden cast upon one claiming damages, and denying relief in the face of evidence of greater probative force, see the following: Cornely v. Marckwald, 131 U. S. 159, 9 S. Ct. 744, 33 L. Ed. 117; Boesch v. Graff, 133 U. S. 697, 10 S. Ct. 378, 33 L. Ed. 787; Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 648, 35 S. Ct. 221, 59 L. Ed. 398; McSherry v. Dowagiac Mfg. Co. (6 C. C. A.) 160 F. 948, 961, 89 C. C. A. 26; Randall Co. v. Fogelsong Mach. Co. (6 C. C. A.)

216 F. 601, 132 C. C. A. 605; United States Frumentum Co. v. Lauhoff (6 C. C. A.) 216 F. 610, 614, 132 C. C. A. 614.

Plaintiff, in order to support its right to recover damages, particularly· such damages as resulted from defendant's failure to sell its goods at a higher price and selling goods of an inferior quality, adopts a trustee theory and cites in support of its contention Computing Scale Co. v. Toledo Computing Scale Co. (7 C. C. A.) 279 F. 648. We find nothing in that case justifying the contention. We approve as correct a statement with respect thereto of the learned District Judge: "In its efforts to supplement and strengthen its proofs, plaintiff seeks to extend the doctrine of 'trusteeship,' not only to the profits derived by defendant from his infringement, but also to his liability for damages. This cannot be done. Defendant cannot be adjudged to be a trustee, even ex maleficio, except with reference to property or property rights which may be denominated a trust. As compensation to the injured party, and in order that the trespasser may not be permitted to benefit by his wrongdoing, the law adopts a fiction, and, as to his gains and profits, places the infringer in the position of a trustee and requires him to account as such. Liability for damages, however, arises solely from the injury done to the property or property rights of the adverse party. Manifestly, in such case, there can be neither a trust nor a trustee. The burden rested upon plaintiff to sustain its claims for damages by competent and satisfactory evidence." Supporting these views, see 3 Pomeroy Equity Jurisprudence (3d Ed.) § 1053; U. S. v. Bitter Root Development Co., 200 U. S. 451, 478, 26 S. Ct. 318, 50 L. Ed. 500; Root v. Railway Co., 105 U. S. 189, 214, 26 L. Ed. 975; Tilghman v. Proctor, 125 U. S. 136, 148, 8 S. Ct. 894, 31 L. Ed. 664. See, also, Hamilton-Brown Shoe Co. v. Wolf Bros. Co., supra, 259 (36 S. Ct. 269).

[12] Plaintiff also complains of the refusal of the District Court to triple or otherwise increase the award of damages in accordance with the statute. No damages were awarded. Section 19, Trade-mark Act 1905 (U. S. Comp. St. § 9504), provides: "The court shall have the same power to increase such damages, in its discretion, as is given by section 16 of this act for increasing damages found by verdict in actions at law." Profits and damages are spoken of in this section ·as distinct items of recovery. No final opinion, however, is or need be expressed as to whether it is ever permissible to triple or increase a recovery of profits. Even so, upon the facts of this case, the court below was not wrong in refusing to exercise its discretionary power in plaintiff's favor. All the sales in question were made under cover of a favorable decree. The District Court had, on the first hearing, found in defendant's favor upon the issues of trademark infringement and unfair competition. It was not until on appeal August 1, 1917, that defendant's conduct was ever judicially disapproved. This court refused to extend the accounting ·period back into the period when defendant was guilty of most of the conduct characterized as willful and fraudulent. It also permitted defendant to sell its made-up product. It would be doing violence to the spirit, if not the letter, of the decree granting that permission, to triple or add to plaintiff's recovery. Assuredly, a harsher rule ought not to be applied to the prior period when the propriety of defendant's conduct was so far debatable as to escape the disapprobation of the learned District Judge.

The decrees of the District Court in both cases will be affirmed. In the Ackerman Case and in No. 4113, Dickinson Case, the plaintiff will recover full costs. In No. 4114, plaintiff's cross-appeal in the Dickinson Case, defendant will recover full costs.