**FINCHLEY, Inc., v. GEORGE HESS CO., Inc., et al.**

No. 8505.

District Court, E. D. New York.

July 5, 1938.

Clarence G. Campbell, of New York City, for plaintiff.

Henry A. Friedman, of New York City, (Joseph G. Cohen, of New York City, of Counsel), for defendants.

BYERS, District Judge.

The plaintiff seeks an injunction against the infringement of its trade-mark "Finchley" by the defendants, one of whom (Hess) is a manufacturer of women's dresses, and the other (Gertz) is a distributor thereof, in this district.

At the hearing, the plaintiff waived its prayer for an accounting, and since there is no question of unfair competition involved, the sole issue is narrow; namely, whether the use by Hess of its trade-mark ("Fay Finchley") constitutes infringement.

The plaintiff's mark has been registered with the Patent Office, in January of 1927 for men's clothing, and in February of 1930 for women's clothing.

In November of 1937, the defendant Hess registered under the 1920 Act, 15 U.S.C.A. §§ 121–128, its trade-mark for women's dresses. The registration process under that statute did not invite opposition in the Patent Office, which is urged as a reason why the registration itself, so accomplished, should be disregarded for the purposes of this litigation. The defendant does not rely upon that registration and no attention will be paid to it.

The testimony fairly establishes the use by the plaintiff of its trade-mark since 1916, when it was organized under the laws of the State of New York, and commenced doing business. There are branches in Palm Beach and Southampton; also there is a Chicago enterprise conducted by an Illinois corporation of substantially the same name, which is affiliated with the plaintiff, in that there are some officers or directors in common, and some of plaintiff's officers have made a considerable financial contribution to its capital; the corporate interrelations are such that the Chicago enterprise uses the trade-mark in the conduct of its business with the consent of the plaintiff.

The plaintiff's business consists in the sale of men's apparel which is manufactured for it by others, and for two or three years as recently as 1934 it sold women's coats and hats in its New York store under the trade-mark "Finchley".

That the plaintiff's business is of substantial proportions seems not to be disputed by the defendants; nor is there any testimony tending to contradict that of the plaintiff that it has expended upwards of One Million Dollars in broadly advertising its wares and trade-mark in newspapers, magazines, pamphlets, etc.

There is no holding out that the plaintiff is a manufacturer, but the evidence is persuasive that its trade-mark has come substantially to identify the various products which it sells, and that use of that trade-mark has been made in connection with women's apparel.

The defendant Hess manufactures about one hundred so-called "numbers" of women's dresses, which it supplies to distributors, and does a certain amount of local newspaper advertising of its garments, displaying as part of each advertisement the names and addresses of retail dealers from whom purchases can be made. Of these "numbers" but two have been identi-

fied by a trade-mark, and one of those is that against which this plaintiff seeks protection.

The first question for determination is whether the defendant's mark so closely resembles the plaintiff's as to constitute infringement.

█ There can be no doubt that, as the plaintiff's mark consists of one word, any other mark which adopts that word adopts the dominating feature of the plaintiff's mark, and no reason is apparent why the plaintiff should not be protected against such appropriation. See Queen Mfg. Co. v. Isaac Ginsberg & Bros., 8 Cir., 25 F.2d 284; Reid, Murdoch & Co. v. H. P. Coffee Co., 8 Cir., 48 F.2d 817; Ammon & Person v. Narragansett Dairy Co., D.C., 252 F. 276. In the first, it is said (page 287):

"In order to constitute an infringement, it is not necessary that the trade-mark be literally copied. * * * There may be infringement where the substantial and distinctive part of the trade-mark is copied or imitated. * * * Dissimilarity in size, form, and color of the label and place where it is applied are not conclusive against infringement."

Numerous authorities are cited in support of the foregoing, and the language quoted is thought fairly to represent the state of the law on this subject.

█ The defendant urges that, since it employs its trade-mark for women's dresses, there can be no diversion of the plaintiff's business to it, but that argument is thought to be unavailing for two reasons:

The plaintiff has used the mark in connection with women's apparel and is therefore entitled to protection against infringement in connection therewith; and the fact that no current business in women's dresses is transacted by the plaintiff in the New York store does not mean that such activity may not be resumed.

█ It is unnecessary to attribute bad faith to the defendant Hess, but it is significant that its president admitted on the witness stand that he had known of the existence of the plaintiff, and that it was doing business in New York, and he was familiar with its name, and had been for seven or eight years.

His counsel urges that, in adopting the name "Fay Finchley", he intended it to emphasize a female characteristic, and was influenced to use the second word when passing through a town of that name in Virginia; and he had also "read in numerous detective story magazines of Finchley Common, located outside of London, the favorite haunt of the notorious bandit, Dick Turpin".

Whether the activities of the latter suggested the appropriation of which the plaintiff complains, is not the subject of discussion in the defendant's brief.

On the question of the appropriation of the plaintiff's trade-mark to women's apparel, reference may be had to the case of Finchley, Inc., v. Finchly Co., D.C., 40 F.2d 736.

For the defendant, the argument is that the two trade-marks in question are so dissimilar that the plaintiff's cause must fail.

The cases upon which it relies all involve conflicting marks not confusingly similar.

It may be agreed that the test to be applied is a reasonable one, concerning the application of which opinions may differ. It is presently the view that "Finchley" and "Fay Finchley" are so similar that the owner of the former is entitled to protection against the latter, within the evidence in this case.

█ But little need be said in discussing the "lack of clean hands" argument advanced for defendants, because it appears that the plaintiff licenses the use of the trade-mark "Finchley" to a manufacturer of men's hats, as to which the testimony indicates that certain standards of quality must be maintained. How the defendant can be affected by such a circumstance is not made to appear; nor is it thought that any fraud upon the public is thereby involved. If the trade-mark were not valuable, no one would seek a license to employ it, and the plaintiff's testimony is that these hats are manufactured after the quality has been passed on by the plaintiff, as well as the models and styles, and it is apparent that the same hats which are sold in the plaintiff's store under its trade-mark are sold in other places by the manufacturer under the same trade-mark, pursuant to a license agreement.

█ The second charge of fraudulent conduct is that the plaintiff's advertising is misleading, in that the connection with the Chicago retail store is not accurately stated. The business relations between the two establishments are not at issue in this case, but nothing in the testimony suggests a rea-

son why the affiliation between them should be regarded as other than a legitimate and businesslike arrangement, entirely inadequate to afford sanctuary to these defendants.

Decree for plaintiff, with costs, to be settled on notice.