## TREO CO., Inc. v. NOVACK.

United States District Court,
S. D. New York.
May 21, 1952.

Mock & Blum, New York City, Alex Friedman, New York City, for plaintiff.

Holtzman & Witte, New York City, Samuel Witte, New York City, for defendant.

EDELSTEIN, District Judge.

This cause having been tried before the Court without a jury on February 7, 1952, and the Court having considered all the evidence herein, and counsel for the respective parties having been duly heard, the Court herewith makes its Findings of Fact and Conclusions of Law as follows:

Findings of Fact.

(1) Plaintiff is a corporation organized and existing under the laws of the State of New York, having its office and principal place of business in the City of New York, County of Queens and State of New York.

(2) The defendant is a citizen of the United States and of the State of New York, and is an inhabitant and resident of the City of New York, and conducts business under the trade name and style of Wilco Co. and Wilco Fashions, at 45 East 17th Street, in the City, County and State of New York.

(3) In the year 1916, plaintiff adopted the trade-mark Treo for girdles, corsets, foundation garments and like goods, which has been continuously used in interstate commerce since that date to distinguish plaintiff's goods from those of others.

(4) Certificate of trade-mark registration No. 111,615 covering said trade-mark Treo was granted to plaintiff under the provisions of the Trade-Mark Act of February 20, 1905 on July 25, 1916, and was renewed by plaintiff on August 18, 1936. Since the year 1916, plaintiff has been the sole and exclusive owner of said trade-mark and since July 25, 1916 has been the sole and exclusive owner of said registration and all rights thereunder.

(5) Certificate of trade-mark registration No. 390,660, also covering said trade-mark, was granted to plaintiff under the provisions of the Trade-Mark Act of February 20, 1905 on September 30, 1941, and was republished by plaintiff under the provisions of the Trade-Mark Act of 1946, 15 U.S.C. 1051 et seq., 15 U.S.C.A. § 1051 et seq., on October 5, 1948. Since the year 1916, plaintiff has been the sole and exclusive owner of said trade-mark and since September 30, 1941 has been the sole and exclusive owner of said registration and all rights thereunder.

(6) In June 1948, the defendant adopted the accused trade-mark Triolette which has been continuously used by him in interstate commerce on foundation garments since that time.

(7) The defendant's business is substantially a mail order business and his foundation garments are sold directly to the user under the trade-mark Triolette. The defendant does not manufacture the garments.

(8) The goods of plaintiff which have affixed thereto the mark Treo are manufactured by plaintiff and distributed and sold by it to retail stores, department stores and specialty shops located in the State of New York and throughout the United States of America. Plaintiff does not sell its goods directly to the ultimate user.

(9) The retail prices of plaintiff's Treo goods range from $2.95 up to and including $29.50.

(10) Defendant's Triolette foundation garment has retailed for $5.95 continuously since June, 1948.

(11) Plaintiff has extensively sold its goods throughout the United States of America. From the years 1941 to 1951, inclusive, its sales amounted to $18,427,265. All of the labels and packages included in these sales displayed its said Treo trademark.

(12) Plaintiff has extensively advertised its Treo mark for its goods in publications, magazines and newspapers of national circulation. From the years 1941 to 1951, plaintiff expended $798,815.40 in advertising its said Treo goods.

(13) Both plaintiff and defendant have advertised their respective Treo and Triolette goods in the same issue of the same publication, namely, the New York Times for October 17, 1948.

(14) The goods of the parties on which or in connection with which the respective marks Treo and Triolette are used are substantially similar, they being foundation garments used by the same class of purchasers for the same purpose.

(15) The goods of the parties on which or in connection with which the said marks in issue are used are competitive.

(16) A comparison of plaintiff's registered trade-mark and defendant's accused mark, satisfies the burden of proof of trade-mark infringement, and indicates likelihood of confusion or mistake or deception of purchasers as to the source of origin of the goods.

(17) There is no proof that the sales made by the defendant caused any direct or indirect injury to the plaintiff's business or goodwill or that such sales were not made on the merits of defendant's product and defendant's reputation without any reference to the plaintiff.

(18) There was no evidence of any monetary damage sustained by plaintiff.

### Discussion.

■ This case turns on the factual issue of whether the marks in suit are so much alike that their use on substantially similar goods creates a likelihood of confusion of origin in the minds of the consuming public. "The ascertainment of probability of confusion because of similarity of trade names presents a problem not solvable by a precise rule or measure. Rather it is a matter of varying human reactions to situations incapable of exact appraisement. We are to determine * * the purchasing public's state of mind when confronted by somewhat similar trade names singly presented. Is the similarity of name * * * such as to delude the public or will the prospective buyer readily differentiate between the two names? We can only contemplate, speculate, and weigh the probabilities of deception arising from the similarities * * *." Colburn v. Puritan Mills, 7 Cir., 108 F.2d 377, 378. "A question of similarity of trade-names as applied to a particular product must of necessity be largely a matter of impression. From absolute copy of a name to one which is radically and essentially different there are names innumerable, with varying degrees and shades of difference * * *." Gehl v. Hebe Co., 7 Cir., 276 F. 271, 272. And the difficulty of the problem presented is heightened in the absence of a fraudulent intent on behalf of the user of the accused mark, despite the fact that infringement does not depend on such intent, Woodbury, Inc., v. William A. Woodbury Corp., D.C.S.D.N.Y., 23 F.Supp. 162.

■ A close, side-by-side scrutiny of the marks Treo and Triolette discloses only three letters of identity and six letters of difference, with some further distinction in the sequence of the lettering. The former mark is pronounced "Tree-o" while the latter is said to be pronounced "Try-o-let".[1] As a result of the scrutiny it might

1. But for this pronunciation we have only the testimony of the user of the mark, and only evidence of visual advertising. Therefore, it does not appear whether the consuming public pronounces the name "Try-o-let" or "Tree-o-let", both pronunciations being reasonable from the spelling. And the defendant's contention that the mark was derived from the word "trio", in designation of a triple-featured garment, is some indication that the latter pronunciation is a permissable one.

be concluded that there is sufficient distinction between the marks, in sound and appearance, to obviate confusion. But, in the words of Mr. Justice Holmes, "It is a fallacy to break the fagot stick by stick." Schlitz Brewing Co. v. Houston Ice Co., 250 U.S. 28, 29, 39 S.Ct. 401, 63 L.Ed. 822. It is safe to assume that the potential purchaser does not do so, and it is further to be assumed that the purchaser makes his normal decision on the basis of a mark singly presented rather than on the basis of a side-by-side comparison of two marks. The guiding principle must be the consumer's probable first impression of the accused mark, rather than any possible subsequent reasoning or conscious comparison. Cf., Cantrell & Cochrane v. Hygeia Distilled Water Co., 2 Cir., 283 F. 400, 402.

On this basis I find that the trade-name Triolette does infringe the trade-mark Treo, when applied to ladies' foundation garments. The explanation of the first impression readily presents itself, without the necessity of breaking the fagot stick by stick. The predominant element of the trade-name Triolette is immediately perceived to be the first part, Trio, and there is an unmistakable similarity, both to the eye and to the ear, between it and the entire mark, Treo. The remaining element of Triolette appears to be in the nature of a suffix suggesting a diminutive, and it is in my opinion not sufficiently significant to destroy the predominant similarity. See Finchley, Inc., v. George Hess Co., D.C. E.D.W., 24 F.Supp. 94, 96; Nims, Unfair Competition and Trade Marks, Vol. 1, § 221f, p. 678 et seq. I find, therefore, that there is a likelihood of the confusion of purchasers by the defendants' use of the mark Triolette, and the plaintiff is entitled to an injunction restraining such use. However, there is no evidence that sales made by defendants caused any injury to the plaintiff's business or good will or that such sales were not made on the merits of the defendants product without any reference to the plaintiff. Accordingly, an accounting will not be awarded. Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969; Stardust, Inc., v. Weiss, D.C.S.D. N.Y., 79 F.Supp. 274.

## Conclusions of Law.

(1) This Court has jurisdiction over the subject matter of this action and of the parties herein.

(2) Plaintiff's Registration Nos. 111,615 and 390,660 are good and valid in law.

(3) Defendant has infringed upon said registrations and upon the rights of plaintiff thereunder.

(4) Defendant's mark Triolette is an infringement of plaintiff's registered trade-mark Treo.

(5) A final judgment shall be entered herein, perpetually restraining defendant's use of the mark Triolette or any mark which is a colorable simulation of plaintiff's registered trade-mark Treo, and awarding the costs of this action to plaintiff.